# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| SAUDIA SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:18-cv-01189-GLR |
| | ) | |
| vs. | ) | |
| | ) | Hon. George L. Russell, III presiding |
| OLD NAVY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## JOINT PRETRIAL ORDER

Pursuant to Local Rule 106.2 and the Court's Trial Scheduling Order (ECF 110), the parties, by and through their undersigned counsel, hereby submit their Pretrial Order.

### I.    Plaintiff's Statement of Facts and Legal Theories

### A.  Facts

On July 25, 2016, Plaintiff, a forty-seven year old divorced mother of three and grandmother of one, was the owner and operator of  "I Am Naturally Beautiful" ("IANB"), a boutique specializing in women's apparel and accessories.  As such, she purchased garments and other merchandise from retailers and affixed her signature emblem onto them.  Sales were primarily online and through vending at local and regional events.  Plaintiff was also employed with the Baltimore City Public School System  for seventeen years and employed with Richcroft for two years.  Prior to the incident, Plaintiff had never been convicted, arrested or accused of theft, shoplifting, stealing or any crime.

Before leaving home on July 25, 2016, Plaintiff checked Old Navy's website and saw that gray cotton sleeveless T-shirt dresses ("dresses") for IANB were in stock at the Old Navy store located at 3473J Merchant Boulevard, Abingdon, Harford County, Maryland (the "store")

or (the "location"). Plaintiff frequently shopped at Old Navy for IANB.  She drove to the store alone wearing a sundress, sandals and carrying a very small wallet sized purse.

While *en route*, Plaintiff received a call from her friend Olivia Wright ("Wright") at 1:47PM.  She arrived at the store at approximately 2:00PM and immediately started looking for the dresses.  Plaintiff located the dresses near the front of the store; she removed all of the dresses from the rack - eleven in total – and placed them over her arm.  Standing nearby was manager Megan Yost ("Yost").[1]  Plaintiff said to Yost, "I am going to purchase them all."  She then asked Yost two questions:  (1) "Are these all the dresses you have in stock?"  When Yost responded there were "more in the clearance section," Plaintiff followed up with:  (2)  "Where is the clearance section?"  Yost answered, "In the rear of the store."  Yost seemed irritated by Plaintiff's questions. After this very brief encounter which lasted less than thirty seconds, Plaintiff immediately proceeded to the clearance section and placed the dresses in a cart.  Within three minutes, Yost quietly approached Plaintiff from behind which startled Plaintiff.

After perusing the clearance section, at approximately 2:15PM, Plaintiff walked to the front of the store.  She was alone throughout the entire time she was at the store, and she never entered or attempted to enter the dressing room.  As Plaintiff approached the register, she stopped and picked up a hooded sweatshirt.  Plaintiff asked Yost for a price check, but she declined the hoodie and the cashier kept it.  At 2:16PM, Plaintiff briefly called her daughter Maranda Scott ("daughter"), who had an Old Navy credit card, to inquire about coupons.  Plaintiff made no other phone calls, received no phone calls and did not otherwise use her phone while at the store.

While in line, Plaintiff noticed a sign about an Old Navy discount called "Super Cash"

---

[1] Scott ended the Wright call at 2:03PM.

and asked about it.  Both the cashier, Chelsea Hunter ("Hunter") and Yost explained the promotion to Plaintiff.  Yost then watched as Plaintiff separated her garments into two sections as to take advantage of the promotion and watched as Plaintiff paid for all of the dresses with her Visa credit card in two separate transactions:  One at 2:18PM and one at 2:19PM.  After Plaintiff paid for all of her items and before leaving, she commented to Yost and Hunter, "Have a nice day" and to "stay cool." Plaintiff exited the store and walked to her car with her receipts and bags in hand.

As Plaintiff was placing her bags in her trunk, Plaintiff suddenly saw lights come on two Harford County Police Department ("HCPD") patrol cars.  Plaintiff then immediately saw two uniformed HCPD officers ("the officers").  Each wore a HCPD badge and had a service revolver (firearm).  The second officer was seated in a separate patrol car.  The first officer, who was outside his vehicle, approached Plaintiff and informed her that they had received a report of a woman wearing a pink dress shoplifting.  He then told Plaintiff that she had to return with him to the store.  Plaintiff replied, "Are you serious?" The officer responded, "Yes."  He asked Plaintiff if she had stolen anything and she answered, "No."  He asked to see Plaintiff's identification and if it showed her current address.  She responded by giving him her driver's license and updated address.  The officer Brett Smoot ("Smoot" or "Officer Smoot") retained Plaintiff's driver's license.  As he was returning Plaintiff back to the store, the second officer, Daniel Buchler ("Buchler" or "Officer Buchler") got out of his patrol car and followed behind them.  While Plaintiff was in the store, Officer Smoot "Ran a 28 license plate check" on Plaintiff's black Dodge Dart.

Upon entering the Store, Officer Buchler walked past Plaintiff and over to Yost.  Plaintiff yelled at Yost, and Yost responded, "I'm sorry.  I'm sorry."  Yost then escorted Buchler to the

rear of the Store as Smoot remained immediately next to Plaintiff.  At that point, Plaintiff started

shaking and became disoriented; everything became a blur and she fought to keep from breaking

down, crying.  After several minutes, Yost and Buchler returned.  The officers reported:  "No

Theft Occurred.  Employee anticipated that a shoplifting was going to occur." Exh.5. Smoot then

returned Plaintiff's license to her.  Plaintiff asked Smoot if she could, "Ask Yost what her name

is," and Smoot escorted her over to Yost.  Plaintiff asked, "Do you mind telling me your name?"

Yost replied, "My name is Megan Y.  I'm not giving you my last name."

After some time, Plaintiff left the store, Officer Smoot suggested she get into her car because of the

heat.  He then pulled his patrol car next to Plaintiff's car and read her the report from when the

call initially came in at 2:06PM.  It listed the event as:  Theft IP.  Smoot advised Plaintiff to

make a report to Old Navy's headquarters.  As Plaintiff drove off, she passed by a third HCPD

officer in a police patrol car with its lights on which had blocked the exit.  Plaintiff drove for

approximately one-half mile, pulled over and sobbed.

After some time, Plaintiff called her daughter and told her about the incident.  She then

asked her daughter to look up the contact information for Old Navy's headquarters.  Shortly

after, Plaintiff's daughter called back with the number for Old Navy Customer Relations ("Old

Navy CR").  Plaintiff immediately called and reported the incident to Old Navy CR.  Later that

day at 6:44PM, Plaintiff emailed Old Navy CR but Plaintiff never received a response.  On July

28, 2016, Plaintiff's attorney followed up with calls and on August 10, 2016, a letter to the Old

Navy store and Corporate Office

Yost immediately notified her manager Dana Plauger ("Plauger") of the incident to which

Plauger repeatedly asked, "Why?"  To "accuse any customer of shoplifting" and "to call police

before someone has left" were clear violations of Old Navy policy. Yost was terminated

immediately as a result of the incident.

### B. Legal Theories of the Plaintiff

This action arises from Defendants' unlawful detainment of Plaintiff by police as a direct of Defendant Old Navy's employee Megan Yost's actions. Specifically, this action involves state false imprisonment claim as a result of Yost's intentional and reckless disregard for Plaintiff's rights. Plaintiff's claims center on Yost: (1) willfully and falsely calling and reporting to Harford County Police Department ("HCPD") that Plaintiff was a "thief", a "shoplifter" and "stealing"; (2) refusing to cancel the call to HCPD after watching Plaintiff pay for all of her merchandise; (3) allowing two HCPD officers to order, escort and lead Plaintiff back inside Old Navy; and (4) encouraging and leading HCPD officers to investigate a crime Yost knew Plaintiff never committed.

Plaintiff's negligence claims also center on Yost's actions and/or inactions and because Old Navy hired, retained' and failed to properly train and supervise Yost. HCPD officers unlawfully detained Plaintiff as a result of Defendants' and Yost's breach of duty owed to Plaintiff to act reasonably by cancelling the police call and/or calling off the police when they arrived. Defendants' breach caused harmed to Plaintiff.

### II.     Defendants' Statement of Facts and Legal Theories

### A. Facts

Plaintiff claims that she entered the Old Navy store in Aberdeen Maryland on July 25, 2016 at approximately 2:00 p.m. to purchase some T-shirt dresses that she would put her own logo on and sell at her private retail business. When Plaintiff entered the store, she was talking on her cell phone. Plaintiff recalls there were only two or three other customers in the store and there were only two employees working, Megan Yost, and another employee who she described as an African American female who was short and petite and approximately 22-years-old, who Ms. Yost identified as Chelsea Hunter. Plaintiff admitted that the entire time she shopped in the store she did not notice anything unusual.

Ms. Yost observed Plaintiff walk into the store with an unknown African American male customer approximately the same age as Plaintiff. These two individuals were talking with each other as they entered the store in a very familiar fashion. Based on her observations, Ms. Yost was under the impression that they were shopping together. Immediately after they entered the store together, Plaintiff and the male customer split up, the male customer went down toward the back right corner of the store while Plaintiff went to the left and immediately started talking on her cell phone.   Ms. Yost observed the male customer pull out his cell phone and start talking at the exact same time Plaintiff started talking on her phone.  Within a couple of minutes, Plaintiff approached Ms. Yost and started asking an excessive amount of questions about a sale on dresses which made Ms. Yost suspicious of Plaintiff's activities. Shortly thereafter, Ms. Yost observed Plaintiff grab six or eight dresses, all the exact same dress but in different sizes, and say "I want all of these" which heightened Ms. Yost's suspicion.  At the same time this conversation was ongoing, Ms. Yost observed the male customer reach over the cash register counter and grab a stack of store shopping bags and run out the door. While this was occurring, Plaintiff proceeded to walk in the opposite direction to the back of the store to the Clearance Department.

Ms. Yost was well aware that stealing unused shopping bags was a well-known phenomenon in the retail industry, as such bags would be later used by people attempting to return stolen merchandise for a cash refund accompanied by an explanation that they lost their receipt.   During all her interactions with Plaintiff, Ms. Yost noticed that Plaintiff appeared to be nervously and excessively talking while looking up to the ceiling in an unusual manner.  The culmination of Plaintiff's behavior and the male customer's behavior raised "red flags" and Ms. Yost proceeded to call the police as Plaintiff was exiting the store to report the suspicious behavior of both individuals that led her to believe that theft was committed.

After Plaintiff exited the store and was approaching her car, a Harford County Police Officer asked her to come back into the store for questioning.  When she asked why, the Officer informed her that the store reported that she had shoplifted.   Plaintiff voluntarily and freely reentered the store.

During the incident, the Plaintiff was never placed in handcuffs. Plaintiff was never told she was under arrest. No police officer, nor any other individual, ever touched Plaintiff. No store employee ever touched Plaintiff. No store employee ever threatened Plaintiff in any manner, including threatening to have her arrested. No issue of race, racial profiling, or racial discrimination was ever mentioned or raised by Plaintiff in any manner on the day of the incident. Plaintiff specifically recalls there were two employees working in the store when she was present, Ms. Yost, a Caucasian, and Ms. Hunter, who Plaintiff identified as African American.

### B.  Legal Theories of the Defendant

Defendants contend that based on the totality of the circumstances, there were many red flags that were raised by the Plaintiff's activities in the store, along with the unknown male customer who entered with the Plaintiff and who reach over the cash register counter and grab a stack of store shopping bags and ran out the door which provided Ms. Yost with probable cause that a crime had been committed and a good faith basis to call the police. Under Maryland law, "a private person does not become liable for false imprisonment (or false arrest) when in good faith he provides information, even mistaken information, to lawful authorities, even though such information may be a principal cause of another's imprisonment." Newton v. Spence 20 Md. App. 126, 125; 316 A.2d837 (1974). Furthermore, the Maryland legislature has provided merchants and their agents and employees a qualified privilege to detain or cause the arrest of a person upon probable cause to believe that person committed theft of the merchant's property. Specifically, Section 5-402 of the Courts and Judicial Proceedings Article provides:

> A merchant or any agent or employee of the merchant who detains
> or causes the arrest of any person shall not be held civilly liable for
> detention, slander, malicious prosecution, false imprisonment, or
> false arrest of the person detained or arrested, whether the
> detention or arrest takes place by the merchant or by his agent or
> employee, if in detaining or causing the arrest of the person, the
> merchant or the agent or employee of the merchant had, at the time
> of the detention or arrest, probable cause to believe that the person

> committed the crime of "theft," as prohibited by §342 of Article 27
> of the Code, property of the merchant from the premises of the
> merchant.

Md. Code Ann., Cts. & Jud. Proc.§ 5-402 (2018).

As to Plaintiff's claim of negligence, Defendants contend that their employees acted reasonably under the circumstances and that Plaintiff was contributorily negligent.

Plaintiff objects to Defendants' claim of contributory negligence.

**III.    Counterclaim, Crossclaims and Third Party Claims**

None

**IV.    Amendments Required of the Pleadings**

None

**V.    Issues in the Pleadings to be Abandoned**

This case was appealed to the Fourth Circuit Court of Appeals which dismissed Plaintiff's Defamation, Intentional Infliction of Emotional Distress and Respondeat Superior causes of action (Appeal No. 20-1253, Doc. No. 45).

**VI.    Stipulations of Fact or Requested Stipulations**

**A.  Joint Stipulations**

Defendants will stipulate to Plaintiff's Requested Stipulations Number:

4.    Plaintiff requested from Old Navy the store video for July 25, 2016.

5.    Defendants have not produced the store video from Old Navy for July 25, 2016.

15.    Plaintiff did not commit theft from Old Navy on July 25, 2016.

31.    Megan Yost led a Harford County police officer to the rear of the store.

49.    Megan Yost gave Plaintiff her first name, but not her last name.

50.    Megan Yost called and reported the incident to Dana Plauger.

61.    HCPD officer or officers questioned Plaintiff while at the store.

**B.  Plaintiff's Requested Stipulations**

See Attachment A

**C. Defendant's Requested Stipulations**

None

**VII. Damages Claimed or Other Relief Sought**

A. Yost's targeted attack on Plaintiff caused severe emotional and mental trauma.

B. Plaintiff was humiliated, devastated and incapacitated by the Incident.

C.  The Incident caused significant and long lasting, irreparable harm because:

a.  Plaintiff had never been to mental health therapy, counseling or treatment in her entire life prior to July 25, 2016.

b.  After the Incident on July 25, 2016, Plaintiff had to seek mental health treatment and has been under the care of seeing therapists, counselors, licensed social workers, psychologists, psychiatrist and her primary care physician solely as a result of the Incident.  In addition, Plaintiff's primary care physician has worked actively in concert with her current therapist to develop a mental health plan for Plaintiff.

c.  Plaintiff's treatment has recently been referred to a psychiatrist for additional mental health treatment.

d.  Solely because of the incident, Plaintiff has been diagnosed with PTSD, anxiety and paranoia.  She has been unable to sleep and functioning at reduced levels in every area of her life.

e.  Plaintiff's PTSC, anxiety and paranoia are triggered by various events requiring additional, consistent mental health treatment.

f.  Plaintiff has experienced inability to concentrate, sleeplessness, eating difficulties, crying spells, heart palpitations, nausea, fits of anger and rage, headaches, body aches and other physical ailments.

g.  It is expected that Plaintiff will have to continue receiving mental health treatment throughout her life thereby requiring being under the care of mental health professionals including her psychiatrists, primary

care physician, therapists, counselors, licensed social workers and/or her psychologists throughout the remainder of her life.

D.  Plaintiff has expended substantial sums of money for mental health treatment and prescriptions for medications solely as a result of the Incident.

    a.  Plaintiff's expenses total $13,191 including prescriptions and co-pays

    b.  Plaintiff's bills and expenses for mental health treatment were reasonable and necessary.

    c.  Plaintiff's bills and expenses for mental health treatment were directly related to the services provided and solely a result of the incident.

    d.  Plaintiff had no pre-existing mental health condition or illness.

    e.  Plaintiff is expected to incur substantially more expenses for continued mental health and related treatment solely as a result of the Incident.

**E.**  Plaintiff's business "I Am Naturally Beautiful" ("IANB") has suffered greatly solely as a result of the Incident and Plaintiff has significant loss of  income because:

    a.  Plaintiff had to close her store several times a week to attend therapy, counseling and other mental health treatment.

    b.  Plaintiff could no longer maintain the rigors of operating her store front location of IANB.  After only two (2) years in business, Plaintiff had to close her doors.

    c.  Plaintiff's ability to market IANB is substantially damaged.

    d.  Plaintiff's ability to shop for inventory for IANB is all but destroyed.

    e.  Plaintiff's physical and mental capacity to sell IANB merchandise as a vendor at events is greatly diminished.

    f.  Plaintiff's loss of business income is calculated at $361,200.00

F.  Punitive Damages

    a.  Megan Yost's actions and/or inactions prove malicious intent and

justify a substantial award of punitive damages because:

    i.   She knew Plaintiff had not stolen, committed theft or shoplifted when she called and reported this to the HCPD.

    ii.   She went against Old Navy's Shoplifting Policy which was to wait until a customer leaves and report the theft, if any, on the store portal.

    iii.   She watched as cashier Chelsea Hunter rang up Plaintiff's purchases and testified that she knew Plaintiff had not stolen, committee theft or shoplifted but had, in fact, paid for all of her purchases.

    iv.   She watched from the window as HCPD officers stopped, questioned and ordered Plaintiff back inside Old Navy

    v.   She never called off the HCPD investigation of Plaintiff's alleged criminal activity.

    vi.   She encouraged the investigation by leading a HCPD police officer to the rear of Old Navy where they continued viewing the store video.

    vii.   Plaintiff was required to stand directly beside the HCPD police officer the entire time Yost was in the rear of the store.

    viii.   She refused Plaintiff's request to properly identify herself when asked.

    ix.   She had no accountability but, instead, tried to justify her actions by falsely stating that Plaintiff was, "looking up at the ceiling," "asking excessive and/or self-explanatory questions," and was accompanied by a "Black man."

VIII.    **Exhibits (Other than for Impeachment)**

**Plaintiff's Exhibits:**

See Attachment B

Plaintiff reserves the right to offer into evidence any exhibit identified on this pre-trial order by Defendant, or any document exchanged in discovery, or any document at all for the purposes of impeachment or rebuttal.

**Defendants' Exhibits:**

Any exhibits identified in Plaintiff's Exhibit List.

Defendants reserve the right to use any documents for purposes of impeachment.

IX.    **Witnesses**

**Plaintiff**

In addition to Plaintiff herself, Plaintiff expects to call:

1.    Olivia Wright Davis
      3710 Callaway Avenue
      Baltimore, Maryland 21215

2.    Maranda Scott
      2100 Louise Avenue
      Baltimore, Maryland 21214

3.    Tamara Fleming
      4700 Schley Avenue
      Baltimore, Maryland 21206

4.    Dr. Susan Sheppard Moore
      104 Steed Lane
      Bel Air, Maryland 21014

5.    Randolph Scott
      9701 Marriotsville Road
      Randallstown, Maryland 21133

6.    Jasmine Scott
      3016 Romaric Court, Apt. B
      Baltimore, Maryland 21209

7.    Kendra Scott

4402 Plainfield Avenue, Apt. 9
Baltimore, Maryland 21206

8.  Pamela Tatum
2003 Paulette Road
Dundalk, Maryland 21222

9.  Officer Brett Smoot
Harford County Sheriff's Office
45 S. Main Street
Bel Air, Maryland 21014

10. Officer Daniel Buchler (retired)
1843 Midsummer Lane
Jarretsville, Maryland 21084

11. Megan Yost
313 Stillmeadow Drive
Joppa, Maryland 21085

12. Chelsea Hunter
1313 Gold Meadow Way, Apt. 103
Edgewood, Maryland 21040

13. Dana Plauger
3751 Wolf Trail Drive
Abingdon, Maryland 21009

14. Ashley Masten
Collaborative Care at GBMC
6545 N Charles Street
Towson, Maryland 21204

15. Dr. Courtenay Marrow
Family Care Associates
6535 N. Charles Street, Suite 100
Towson, Maryland 21204

16. Megan Mitchell c/o
Core Counseling
9475 Deereco Road, Suite 410
Timonium, Maryland 21093

17. Jennifer Srevenson M.S. c/o
Core Counseling
9475 Deereco Road, Suite 410
Timonium, Maryland 21093

18.    Brenda Wilson c/o
Core Counseling
9475 Deereco Road, Suite 410
Timonium, Maryland 21093

19.    Peggy Montgomery
10760 Hickory Ridge Road, Suite 113
Columbia, Maryland 21044

20.    Tammy Tilson, LCSW-C
22 W. Pennsylvania Avenue, #207
Towson, Maryland 21093

Plaintiff reserves the right to call any witness identified by the Defendant should the need arise, or any witness at all for the purposes of impeachment or rebuttal.

**Defendants**

1.    Corporate Designee Old Navy Manager Deric Page.

2.    Former Old Navy employee Megan Yost.

3.    Former Old Navy Employee Chelsea Hunter.

4.    Former Old Navy Employee Dana Plauger.

**X.    Expert Witnesses**

**Plaintiff**

Plaintiff has no retained expert witnesses.  Following is a list of experts Plaintiff proposes to call as hybrid fact/expert witnesses who are expected to testify as to matters based on personal knowledge in addition to render opinion testimony.

Plaintiff expects to call:

1.    Jasmine Scott                Loss Prevention/Asset Retention
3016 Romaric Court, Apt. B
Baltimore, Maryland 21209

2.    Officer Brett Smoot           Law Enforcement
Harford County Sheriff's Office
45 S. Main Street
Bel Air, Maryland 21014

.       3.      Officer Daniel Buchler (retired)          Law Enforcement
                1843 Midsummer Lane
                Jarretsville, Maryland 21084

        4.      Chelsea Hunter                            Loss Prevention Awareness Lead
                1313 Gold Meadow Way, Apt. 103
                Edgewood, Maryland 21040

        5.      Dana Plauger                              Loss Prevention/Retail Management
                3751 Wolf Trail Drive
                Abingdon, Maryland 21009

        7.      Ashley Masten                             Therapist/Mental Health Counselor
                Collaborative Care at GBMC
                6545 N Charles Street
                Towson, Maryland 21204

        8.      Dr. Courtenay Marrow                      Primary Care Physician
                Family Care Associates
                6535 N. Charles Street, Suite 100
                Towson, Maryland 21204

        Plaintiff may call:

        9.      Megan Mitchell c/o                        Therapist/Mental Health Counselor
                Core Counseling
                9475 Deereco Road, Suite 410
                Timonium, Maryland 21093

        10.     Jennifer Srevenson M.S. c/o               Therapist/Mental Health Counselor
                Core Counseling
                9475 Deereco Road, Suite 410
                Timonium, Maryland 21093

        11.     Brenda Wilson c/o                         Therapist/Mental Health Counselor
                Core Counseling
                9475 Deereco Road, Suite 410
                Timonium, Maryland 21093

        12.     Peggy Montgomery                          Therapist/Mental Health Counselor
                10760 Hickory Ridge Road, Suite 113
                Columbia, Maryland 21044

        13.     Tammy Tilson, LCSW-C                      Therapist/Mental Health Counselor
                22 W. Pennsylvania Avenue, #207
                Towson, Maryland 21093

XI.    **Deposition Excerpts**

**Plaintiff**

<u>Expects to Offer</u>

Plaintiff expects to offer:

**Deposition of Megan Yost (August 13, 2018):**
- 25:20-26:1
- 26:10-11
- 27:15-16
- 28:11-14
- 29:2-9
- 30:2-6
- 31:2-8
- 32:22-33:5
- 33:3-4
- 34:9-10
- 34:14-35:1
- 35:3-4; 7; 10
- 36:9-10; 17-19
- 37:20-22
- 38:13-59:3
- 40:12-13; 17
- 41:8-22
- 42:1-10; 12-15; 22
- 43:1-6; 10-12
- 46:17-22
- 47:1-13; 16-18
- 50:7-10
- 52:17-19
- 53:12-54:9
- 55:7-8
- 59:20-60:1
- 64:15-18
- 65:8-13; 20-22
- 66:1-2; 10-13
- 68:4-7; 13-14
- 69:4-7; 18-21
- 71:12-19

- 74:22-75:1
- 81:21-82:1
- 90:3-5
- 98:10-14
- 99:20-100:3
- 101:17
- 106:18-20
- 111:17-18
- 112:8-12
- 118:17-22
- 135:8-22
- 136:4-13; 20-22
- 137:1-3
- 139:13-22
- 140:9-22
- 148:8-12; 13-17
- 149:9-11
- 150:10-12
- 153:11-14; 18-20
- 155:13-18
- 157:18-158:1
- 159:16-160:1
- 161:1; 9-11; 16-17; 19-22
- 162:5-18; 21
- 163:2
- 183:13; 15-17; 20
- 185:16-20
- 186:4-9; 16-18

**Deposition of Dana Plauger (October 11, 2018):**
- 27:3-11
- 52:17-19
- 56:4-8; 18-25
- 58:12-15
- 59:2-5
- 61:25-62:1-7
- 62:20-24
- 63:20-24
- 98:10-11; 14

**Deposition of Officer Brett Smoot (December 19, 2018):**

- 8:15-19
- 10:16-11:1
- 12:10-13:21
- 15:8-18:21
- 20:10-21:14
- 22:1-23:4
- 24:14-15
- 26:17-21

Plaintiff reserves the right to add to this list pages and/or lines of any portion of deposition to be offered in a party's case in chief or any counter-designations under Fed. R. Civ. P. 32(a)(4).

**Defendants**

There is no specific deposition testimony to be listed.

Defendants reserve the right to use any portion of any deposition for purposes of impeachment.

**XII.    Any Other Pretrial Relief**

No motions are pending.

Defendants object to all documents, records, exhibits, and witnesses, as well as expert witnesses Plaintiff has identified for the first time on April 24, 2023, and will file a motion concerning the same as discussed at the motions hearing.

**XIII.    Any Other Matters Added by the Court**

The parties are scheduled for a Settlement Conference on May 12, 2023 at 9:30A.M.before Judge Beth Gesner.

**Defendants**

There is no specific deposition testimony to be listed.

Defendants reserve the right to use any portion of any deposition for purposes of impeachment.

**XIV.   Any Other Pretrial Relief**

No motions are pending.

Respectfully submitted,


By:    /s/ Martina Evans_____
Martina D. Evans, Esquire
Federal Bar No.:  24544
Martina D. Evans, Attorney at Law
P.O. Box 11084
Baltimore, Maryland 21212
(410) 551-5787
MEvansAtty@aol.com
*Attorney for Plaintiff Saudia Scott*


By:    /s/Christopher R. Dunn
Christopher R. Dunn, Esquire
Federal Bar No.:  05278
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
(301) 352-4950
Cdunn@decarodoran.com
*Attorney for Defendants Old Navy, LLC and Gap Inc.*

-